NEVIN W. BUTLER, as Receiver, etc., Respondent, *v.* AMOS M. KIDDER et al., Appellants.

Under the act of 1860 (Chap. 345, Laws of 1860), allowing the lessees or occupants of a building which, without any fault or neglect on their part, has been injured so as to be untenantable, to surrender it, and relieving them, upon their so doing, from liability for rent "unless otherwise ex-

pressly provided by written agreement or covenant," it is not essential, in order to exclude a lessee from the benefit of the statute; that there should be a covenant in express terms, obligating him to pay rent although the building becomes untenantable; it is sufficient if the intention to take away such benefit is clearly shown on the face of the lease or other written agreement, as where it appears that the parties having in mind the contingency mentioned in the statute, inserted provisions or covenants inconsistent with the right of surrender.

*It seems* that a lease is not taken out of the statute simply by a general covenant on the part of the lessee to repair.

A lease of a basement room in a building provided that the lessor should not be liable for any injury or damage that might be done to the demised premises or to goods therein, from water leaking or flowing from any part of the building, or from any pipes or plumbing, etc.; that the lessor would " not allow any deduction in rent on account of the premises not being in good or tenantable order during the time of making of any alterations or repairs * * * during the term of this lease, except the same shall be made necessary by fire." In case of injury by fire, the rent was to be suspended, if the premises were rendered wholly untenantable, until the damage was repaired; if rendered partially untenantable, a reasonable deduction was to be made, the lessor binding himself to make such repairs, unless he elected to remodel or rebuild, in which case the lease was to terminate. The lessees covenanted to make all other needful or required repairs. During the term, the room so leased was inundated by water from a room over it, not connected therewith, whereby, as the lessees claimed, without their fault or negligence, the room became untenantable; and after due notice thereof, they quit the premises. In an action to recover rent accruing after such abandonment, *held*, that the plain import of the lease was that if repairs were rendered necessary to make the premises tenantable, by other causes than fire, there should be no deduction of rent during the time occupied in making them, and in any case there should be no right to surrender; and, therefore, that plaintiff was entitled to recover.

(Submitted October 25, 1881; decided November 22, 1881.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, entered upon an order affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover two installments of rent falling due under and by the terms of a lease of a basement room of a building on Wall street, in the city of New York.

The lease contained these clauses:

"13th. That the said landlord will not allow to the said tenants any deduction in rent on account of the premises, fixtures or furniture not being in good or tenantable order during the time of the making of any alterations or repairs, agreed upon or otherwise required, during the term of this lease, whether the same are made by the said landlord or the said tenants, except the same be made necessary by fire.

"14th. That the said tenants shall take good care of the premises, fixtures and furniture, and suffer no waste, and shall, at their own cost and expense, make and do all needful or required repairs to the same, including the gas and plumbing works, pipes and glass that are in and on said premises, and, at the expiration of the term, quit and surrender to the said landlord the premises, fixtures and furniture, with all additions and improvements, in as good state and condition as they were in at the commencement of the term, reasonable use and wear thereof and damage by fire excepted.

"15th. That the said tenants shall, in case the said demised premises, or the building in which the same are located, be damaged by fire, give immediate notice thereof to the said landlord. And the said landlord shall, if the damage, in his estimation, is not so great as to make it necessary or desirable to remodel or rebuild the said building, cause the damage to be repaired with all reasonable dispatch, and the rent, if the said demised premises are so damaged as to render them wholly untenantable, shall be abated, *pro rata,* from the time of the fire until the premises are made tenantable; if, however, the said demised premises are rendered but partially untenantable, and the building in which the said demised premises are located be not so injured that the said landlord shall elect to remodel or rebuild, then the damage shall be repaired, as above, and a reasonable abatement be made in rent, from the time of *the fire* until the said demised premises are made tenantable; but if the building in which the said demised premises are situated be so extensively damaged by fire or otherwise as, in the opinion of the said landlord, to make it desirable to remodel or rebuild the said building, then this lease shall be terminated

and the said demised premises shall be surrendered, and the accrued rent be apportioned and paid, *pro rata*, up to the time of the fire or damage."

Defendants alleged in their answer and offered to prove upon the trial, in substance, that in September, 1876, the demised premises were inundated by water from the room overhead, whereby, without any fault or negligence on the part of defendants, they were rendered wholly untenantable and unfit for occupancy ; that defendants thereupon immediately notified the agent of the landlord of the fact, and that they proposed to quit the premises, and that on September 30, 1876, they did quit and surrender possession ; and that the time occupied by plaintiff in making repairs was about one month. The offer was excluded. The controversy was as to the rent accruing after the abandonment.

*Wm. H. Scott* for appellants. The lease contained no waiver of the right of abandonment given to defendants by the statute and was determined September 30, 1876. (Coke on Littleton, 45 b ; 2 Blackstone's Com. 144; *Young* v. *Dake,* 5 N. Y. 467 ; *Suydam* v. *Jackson,* 54 id. 454 ; *Weed* v. *Tucker,* 19 id. 433; *Hudler* v. *Golden,* 36 id. 447 ; Dwarris on Statutes, 562, 614, 632.)

*John L. Hill* for respondent. The tenant's covenant to repair, etc., excludes the application of the statute of 1860. (*Truesdale* v. *Booth,* 4 Hun, 400 ; *Jackson* v. *Suydam,* 54 N. Y. 450; *Lockrow* v. *Horgan,* 58 id. 635.) It is no excuse to say that the defendants had no access to those rooms above them where the leakage was. (*Bloomer* v. *Merrill,* 1 Daly, 485 ; 29 How. 259 ; *Truesdale* v. *Booth,* 4 Hun, 100.) The general rule *noscitur a sociis* limits the meaning of this lease in all these particulars. (*Morse* v. *Buffalo F. & M. Ins. Co.,* 11 Am. R. 587, fr ; 30 Wis. 534.) In any event the plaintiffs were entitled to recover the rent which had accrued up to September 30, 1876. (*Sperry* v. *Miller,* 16 N. Y. 407 ; *McKenzie* v. *Farrell,* 4 Bosw. 192.)

ANDREWS, Ch. J.    The act of 1860 in legal effect, allows
lessees or occupants of a building, which, without any fault or
neglect on their part, has been destroyed or injured by the ele-
ments, or any other cause, so as to be untenantable or unfit for
occupancy, to quit and surrender the leasehold premises, and
relieves them, upon so doing, from all further liability for rent,
"unless otherwise expressly provided by written agreement or
covenant."    (Laws of 1860, chap. 345; *Johnson* v. *Oppenheim*,
55 N. Y. 280.)

The lease in question, was of the room or premises designated
as No. 1, on the basement floor of No. 4 Wall street, in the
city of New York.    On the 28th of September, 1876, during
the term of the lease, the premises were inundated by water
from the urinal in a room over the demised premises, but not
connected therewith, whereby the demised premises (as was
offered to be shown) were, without any fault or neglect of the
defendants, rendered wholly untenantable, and unfit for occu-
pancy.    The defendants thereupon notified the agent and
attorney of the lessor, and also the plaintiff (who had been ap-
pointed receiver of the leasehold premises), that the premises
were untenantable, and that they would move out, and im-
mediately thereafter they did remove from, and quit the
premises.    The plaintiff thereupon commenced to repair, and
the workmen were occupied a month in putting the premises
in tenantable condition.

This action is brought for rent accruing under the lease
subsequent to the abandonment of the premises by the defend-
ants, and they rely for their defense upon the statute of 1860.
The question is, was the obligation to continue the payment of
rent, notwithstanding the untenantable condition of the premi-
ses, "expressly provided by written agreement or covenant."
The object of the statute is plain.    It was designed to miti-
gate the rigorous rule of the common law, which, in the absence
of special clauses in the lease, subjects lessees to the continued
payment of rent, notwithstanding the premises have become
untenantable, or been destroyed by fire or other casualty.    This
rule was based upon the construction given to a general

covenant for the payment of rent. Where there was no exception or qualification in the lease, of the covenant to pay rent, the courts held that such an exception or qualification could not be implied, and the lessee was not relieved from his obligation, although, without fault on his part, he was deprived of the beneficial use of the demised premises. (*Walton* v. *Waterhouse*, 3 Saund. 422, note.)

The statute of 1860 in effect incorporates into every lease the privilege and exemption therein contained, unless "otherwise expressly provided by written agreement or covenant." There is in the lease in question, no express agreement, in so many words, that the lessees, if the premises become untenantable, or unfit for occupation, shall continue to pay rent to the end of the term. If it is essential, in order to exclude a lessee from the benefit of the statute, that there should be a written agreement or covenant, in express terms, obligating him to pay rent, notwithstanding the premises shall be destroyed or become untenantable, it ends the contention here, for no such literal and exact words, are to be found in the lease in question. But we think it would be too strict a construction to hold that the application of the statute is only excluded, where the continuing obligation to pay rent, notwithstanding the destruction of the demised premises, or such injury as should render them untenantable, is expressed in exact and precise terms. The statute doubtless requires that there should be an express agreement as contradistinguished from an agreement implied only, and it must also be in writing; and having in view the occasion and purpose of the statute, and the fair construction of its language, we think the intention to take away the benefit of the exemption, should be clearly shown on the face of the lease or other written agreement, before a tenant can be deprived of the benefit of the act. It is clear that he is not deprived of it by force of a covenant in the lease to pay rent for the whole term, for the statute restrains and limits the operation of this covenant, in the contingencies specified. Nor, in our judgment, is a lease taken out of the statute by a general covenant on the part of the lessee to repair. Such a covenant, in the

absence of any thing in the lease explaining or extending it, would not, we think, prevent the lessee from availing himself of the statute. Read in connection with the statute, it would bind the lessee to repair, subject to the qualification that in case the premises should be destroyed, or should become untenantable, without his fault, he might abandon them, and terminate the lease. We think the words, " unless otherwise expressly provided by written agreement or covenant," while they do not require an agreement *in totidem verbis*, that the rent shall continue, notwithstanding the destruction of the premises, or their becoming untenantable, are nevertheless not satisfied, unless it appears from the lease or other writing that the parties had in mind the contingency mentioned in the statute, and inserted provisions or covenants, inconsistent with the right of surrender thereunder. There must be a necessary implication from the written agreement, of an intention that the rent and term should continue, notwithstanding the occurrence of the events mentioned in the statute, and such intention is not to be spelled out from doubtful clauses, or argumentatively inferred.

The lease in question does not, as we have said, state in precise terms that the rent is to continue in case the premises become untenantable, but we think the thirteenth clause, construed in connection with other clauses, substantially provides, that that event, shall not exempt the lessees from payment of rent, or entitle them to surrender the premises. That the premises were liable to be injured by water from other parts of the premises was contemplated by the parties, as the lease provides that the landlord shall not be liable for any injury or damage that may be done to the building or premises (*i. e.* the demised room) or to any goods, etc., kept or stored therein, which may leak or flow from any part of the building, or from any pipes or plumbing works, etc. The provision in the thirteenth clause that there shall be no deduction of rent during repairs, except made necessary by fire, is equivalent to an affirmative agreement to pay rent during such time, and is wholly inconsistent with the right of surrender, by reason of an untenantable condition, not produced by

fire.   The fifteenth clause provides for the case of injury by fire. By that clause the rent is to be suspended, if the premises are rendered wholly untenantable by fire until the damage is repaired, and if rendered but partially untenantable, a reasonable abatement is to be made, during the time occupied in making repairs.   The landlord binds himself to make the repairs rendered necessary by fire, unless he elects to remodel or rebuild, and in case of such election, the lease is to terminate.   By the fourteenth clause, the lessees covenant, to make all needful or required repairs, and surrender the premises at the expiration of the term, in as good condition as they were at the commencement, " reasonable use and wear thereof, and damage by fire excepted."

Construing the different provisions of the lease together, the agreement is, that in case of injury by fire the payment of rent shall be either wholly or partially suspended while repairs are being made by the landlord; that if repairs should be rendered necessary by other causes, there shall be no deduction of rent during the time occupied in making them, but the obligation to pay rent shall continue, and that in either case there shall be no right of surrender.   We think this is the plain import of the agreement.   It will be observed that the lease does not provide for the contingency of the entire destruction of the building by fire, or other casualty.   But by the general rule of law, independently of the act of 1860, the lease being of a room in a building, and not of the whole building, the destruction of the building would terminate the lease, as the covenant of the lessee to repair, could not be held to cast upon him the duty of rebuilding the entire structure.   (*Graves* v. *Berdan*, 26 N. Y. 498.)   For the reasons stated, we think the judgment should be affirmed.

All concur.

Judgment affirmed.