NATHAN MAY et al., Composing the Firm of MAY, LEVY & MAY, Respondents, *v.* CONSTANT GILLIS, Appellant.

1. LEASE — SURRENDER OF DEMISED PREMISES AS UNTENANTABLE — REAL PROPERTY LAW, § 197.    A covenant by a lessee to make '' all inside and outside repairs'' imports a general covenant to make ordinary, not extraordinary, repairs, and does not deprive him of the protection of section 197 of the Real Property Law (L. 1896, ch. 547) authorizing a tenant to surrender the premises, without liability for rent for the unexpired term, where, without his fault, they have been so injured by the elements as to be untenantable and unfit for occupancy.

2. TRIAL — QUESTIONS OF FACT.    In an action against the lessee to recover the rent, conflicting evidence (1) as to whether the injury was of such a character as to render the premises untenantable, and (2) as to whether the defendant did in fact surrender them in consequence of their having become untenantable, presents questions of fact which should be submitted to the jury.

*May* v. *Gillis,* 53 App. Div. 393, reversed.

(Argued December 6, 1901; decided December 31, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 24, 1900, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John F. Brush* and *E. D. Benedict* for appellant. The covenant in the lease that the tenant would repair the premises did not prevent him from taking advantage of the provisions of section 197 of chapter 547 of the Laws of 1896. (*Suydam* v. *Jackson,* 54 N. Y. 450; *Butler* v. *Kidder,* 87 N. Y. 98; *Vann* v. *Rouse,* 94 N. Y. 401; *Tallman* v. *Murphy,* 120 N. Y. 345; *Meserole* v. *Hoyt,* 161 N. Y. 59.) Whether the premises were destroyed or so injured by the elements as to be untenantable and unfit for occupancy without defendant's fault or neglect, and whether he quit and sur-

rendered the same, before the rent became due, were questions of fact which should have been submitted to the jury. (*Meserole* v. *Hoyt*, 161 N. Y. 62.)

*Albert M. Fragner* and *Mitchell May* for respondents. The defect in the building was one which, under the lease, the defendant was required to repair. (*Lockrow* v. *Horgan*, 58 N. Y. 635; *Ward* v. *Kelsey*, 38 N. Y. 80; *Meyers* v. *Burns*, 35 N. Y. 269; *Trusdall* v. *Both*, 4 Hun, 400; *Cohn* v. *Hill*, 30 N. Y. Supp. 210.) The damage to the building arose through no negligence of the plaintiffs, but if by any negligence, that of the defendant. (*Johnson* v. *Oppenheim*, 55 N. Y. 285.) The defendant never quit and surrendered the premises. (*Thomas* v. *Nelson*, 69 N. Y. 121; *Copeland* v. *Luttgen*, 40 N. Y. Supp. 653; *Borell* v. *Lawton*, 90 N. Y. 297; *Smith* v. *Kerr*, 108 N. Y. 34.) As the facts were undisputed regarding the defect in the building and the same was of so immaterial a nature, the court did not err in withdrawing that question from the jury. (2 McAdam on Landl. & Ten. 1299; *Suydam* v. *Jackson*, 54 N. Y. 457; *Edgerton* v. *Page*, 20 N. Y. 281; *Lounsberry* v. *Snyder*, 31 N. Y. 51; *Tallman* v. *Murphy*, 120 N. Y. 349.)

WERNER, J. The plaintiffs leased to the defendant certain premises in the borough of Brooklyn, city of New York, for the period of three years commencing on May 1st, 1897, at an annual rent of $840, payable monthly in advance. The premises were known as Nos. 1807, 1809 and 1811 Broadway, and consisted of a frame building one story high, having a frontage of forty-six feet on Broadway, and a shed extension about thirteen feet wide and ninety feet long, which was attached to the main building and referred to as the "bowling alley."

It is claimed that in or about the night of November 29th, 1898, there was a heavy fall of snow, in consequence of which a part of the roof of the extension gave way. A few days thereafter about 25 feet of the extension was taken down

by the building department of the city of New York because of its unsafe condition. The defendant did not occupy the premises after the 30th of November, 1898.

This action was brought to recover the rent of the premises for December, 1898, and January, 1899, and the sum of $14.50, the amount of the building department's bill for the removal of that part of the extension above referred to, which it is alleged was necessarily incurred by reason of the defendant's neglect to keep the premises in proper repair. The answer admitted the making of the lease, the non-payment of the rent, and alleged as a separate defense that the defendant was deprived of the use of the premises during the time mentioned in the complaint by reason of circumstances over which he had no control and by fortuitous events. At the close of the trial the court permitted the anwer to be amended to conform to the proofs in the case, by substituting in place of the separate defense above referred to, an averment stating in substance that on or about November 29th, 1898, the premises were, without any fault or neglect of the defendant, so injured by the elements as to be untenantable and unfit for occupancy, and that defendant thereupon on November 30th, 1898, quit and surrendered the premises. The answer having been thus amended, the court directed a verdict for the plaintiffs, against the defendant's exception and over his requests to go to the jury upon the questions of untenantability and surrender.

The lease contained the following covenants : " All inside and outside repairs to be made by the party of the second part (the defendant), and that at the expiration of the said term the said party of the second part will quit and surrender the premises hereby demised, in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted."

The defendant claims to have surrendered the premises and invokes the protection of section 197 of chapter 547, Laws of 1896, which provides : " Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and

no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender." This section is a substantial re-enactment of chapter 345 of the Laws of 1860, which has frequently been considered by this court.

The respondents contend that the covenant in the lease to make all inside and outside repairs takes this case out of the provisions of the statute, and required the defendant to keep the premises in a tenantable condition. We think the words, "All inside and outside repairs" import simply a general covenant. Under this clause the defendant was bound to make all ordinary repairs, but was not called upon to make those which were extraordinary. To give these words the force and meaning contended for by the respondents would make the defendant liable to rebuild in case of complete destruction of the premises. Under such a construction there could be no other limitation upon the liability of the defendant. Such an interpretation is neither reasonable nor necessary, especially as applied to the facts of this case. In *Butler* v. *Kidder* (87 N. Y. 98) the lease provided that the tenants "shall take good care of the premises, fixtures and furniture, and suffer no waste, and shall at their own cost and expense, make and do all needful or required repairs to the same." In discussing the statute above referred to in its application to that case, Judge ANDREWS said: "Nor in our judgment is a lease taken out of the statute by a general covenant on the part of the lessee to repair. Such a covenant, in the absence of anything in the lease explaining or extending it, would not, we think, prevent the lessee from availing himself of the statute. Read in connection with the statute it would bind the lessee to repair, subject to the qualification that in case the premises should be destroyed or should become untenantable, without his fault, he might abandon them and terminate the lease. We think the words 'unless otherwise expressly provided by writ-

ten agreement or covenant,' while they do not require an agreement *in totidem verbis*, that the rent shall continue, notwithstanding the destruction of the premises or their becoming untenantable, are nevertheless not satisfied, unless it appears from the lease or other writing that the parties had in mind the contingency mentioned in the statute, and inserted provisions or covenants, inconsistent with the right of surrender thereunder. There must be a necessary implication from the written agreement of an intention that the rent in terms should continue, notwithstanding the occurrence of the events mentioned in the statute, and such intention is not to be spelled out from doubtful clauses or argumentatively inferred." The language above quoted is precisely applicable to the covenants here under consideration. The case of *Lockrow* v. *Horgan* (58 N. Y. 635), relied upon by the respondents, is not applicable to the facts of the case at bar. In that case the covenant not only required the lessee to make all necessary repairs, but he was to keep the premises in tenantable order at his own expense, and leave the improvements on the premises at the expiration of the lease. The settling of the rear wall of the building, which was due to the defective construction of the foundation, was the reason assigned for the tenant's abandonment of the premises. The court there considered the covenant as casting upon the tenant the burden of repairing the wall, and held that the case did not fall within the provisions of the statute referred to. We are inclined to regard this as an extremely close construction of that covenant, although it contains language from which the inference could be drawn that the purpose of the covenant was to require the lessee to make *all* repairs. If, however, there is nothing in the language of that covenant which differentiates it from the covenant in the case at bar, or in *Butler* v. *Kidder* (*supra*), the latter case must be considered as distinctly overruling *Lockrow* v. *Horgan* (*supra*).

Under our construction of the covenant before us, the question arises whether the learned court was right in directing a verdict for the plaintiffs. There was evidence from which

conflicting inferences could be drawn upon two questions:
(1) Was the injury to the demised premises of such a character
as to render them untenantable? (2) Did the defendant in
fact surrender the premises in consequence of their having
become untenantable? The first of these questions can only
be decided in the light of the evidence which bears upon the
character of the whole structure, its general condition, the
extent and character of the defendant's use thereof, and the
relation which that part of the building taken down sustained
to the whole premises. The defendant claimed that a sub-
stantial part of the premises had been rendered unsafe and
untenantable by the elements, and, because of that fact, had
been demolished by the building department. The plaintiffs
contended that the destroyed part of the building was a mere
shed, the taking down of which did not interfere with the
actual and beneficial use to which the defendant had pre-
viously devoted the premises. There was evidence tending
to show that the defendant had used this part of the build-
ing as a storeroom, but that he had not occupied any of the
premises for some time prior to the falling in of the roof
extension. There was also evidence tending to show that the
shed or extension could have been repaired without rebuild-
ing, if the building department had not removed the fallen
portion.

Upon the question of surrender, the defendant insisted that
he had been driven from the premises by the destruction of
an essential part thereof. There was rebutting evidence tend-
ing to show that the defendant had left the premises before
the occurrence of the storm which it is claimed rendered a
part thereof unsafe, that the premises had been marked
" to let," and that defendant had endeavored to arrange with
plaintiffs for a surrender by consent. The mere fact of the
destruction of a part of the building did not terminate the
lease, unless the tenant, in the exercise of his rights, effected
a full and absolute surrender of the premises (*Smith* v. *Kerr*,
108 N. Y. 31), and upon the evidence presented the ques-
tion arose whether the defendant had made such a surrender.

The evidence upon these two questions, although somewhat meagre and unsatisfactory, presented questions of fact which should have been submitted to the jury. (*Meserole* v. *Hoyt*, 161 N. Y. 59.)

The judgments of the courts below should be reversed, and a new trial granted, with costs to abide the event.

Parker, Ch. J., Gray, Bartlett, Martin, Vann and Cullen, JJ., concur.

Judgments reversed, etc.