## LEHMEYER v. MOSES.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

LANDLORD AND TENANT—TERMINATION OF LEASE—DESTRUCTION OF PREMISES—CONSTRUCTION OF LEASE.

Laws 1896, c. 547, provides that where a leased building is injured, without the tenant's fault, so as to be untenantable, in the absence of an express agreement to the contrary rent shall cease. A 40-year lease of improved realty provided that the tenant should insure for his sole benefit, and should have no claim on the lessor for any loss by fire, but that in case of the destruction of the building he might rebuild. A subsequent agreement recited that the property was already insured for the lessee's benefit, and provided that he should continue to so insure it, and that if the lessor received the insurance, and failed to pay it to lessee, the latter might retain the rent until it equalled the amount of the insurance. *Held*, that there was an express agreement that the lease should not be terminated by fire, and hence the tenant was not released by a fire from paying rent.

Appeal from trial term, New York county.

Action by Louis H. Lehmeyer against Moses H. Moses. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edmund L. Mooney, for appellant.

E. Ritzema De Grove, for respondent.

INGRAHAM, J. The action was brought to recover the rent due on April 1, 1901, for certain premises in the city of New York, and the only question presented is whether the lease under which the plaintiff claimed was terminated by a fire which occurred upon the premises before the rent became due. The lease in question was dated May 1, 1887, and leased the house and lot "belonging to the said party of the first part, situate in the city, county, and state of New York, and known as number 206 East One Hundred and Twentieth (120) street, New York City, with the appurtenances, for the term of three (3) years from the first day of May, 1887 (one thousand eight hundred and eighty-seven), at the yearly rent or sum of twelve hundred dollars, payable monthly in advance, during the continuance of this lease," with a further term of 20 years from May 1, 1890, upon the same covenants and conditions, except that the rent was to be $1,400 per year, and with a further term of 20 years from the 1st of May, 1910, at the yearly rent of $1,540. The lease contained the following clause:

"That said party of the second part agrees to keep the said premises insured for his own & sole benefit, and will have no claim and demand on the party of the first part for any damage or loss on building in case of fire. And the party of the second part [defendant] agrees to do all repairs on said premises, if any, or if desired by him, at his own cost and expense, without any claim on the party of the first part. In case of the destruction of the said building by fire or otherwise, the party of the second part may rebuild the same and erect another building."

The building seems to have been two stories in height, originally a frame building; but when the first floor was altered to be used as a store, a brick front was put in. On March 18 or 19, 1901, there was a fire upon the premises, which seriously injured the building, so that it was ordered to be taken down by the building department; and subsequently, on the 30th of March, the defendant notified the plaintiff that, in consequence of the building having been so injured by fire as to be untenantable and unfit for occupancy, the defendant surrendered the leasehold and premises. There was also an agreement between the parties to the lease, dated July 1, 1887, which recited the lease, and that the house erected on the premises "has been and is now insured in the sum of $5,000.00, and the loss, in case of fire, is made payable to the mortgagee"; that by the lease the defendant had agreed to keep the premises insured, and had paid to the plaintiff $30, being the proportionate part of the premium due under the policy of insurance; and provided that in the event of the said premises being damaged by fire, or wholly destroyed thereby, the lessor would pay to the lessee the amount which the insurance company should pay under said policy to repair the damage done, or rebuild in case the premises were wholly destroyed, and that, in the event that the lessor should neglect or refuse to pay to the lessee the amount so paid by the insurance company, then the lessee should retain the rent thereafter to become due until the amount thereof should equal the payment

made for the loss by the insurance company under the said policy before referred to. It is quite apparent from the lease and agreement that the parties had in mind the possibility of the destruction of the building, and provision was made for the happening of that contingency. The building (not the lessee's interest) was to be insured, and the amount paid by the insurance company was to be paid to the lessee. He was to make all the repairs to the building, and, in case it was destroyed by fire, was to rebuild. This is entirely inconsistent with his right to terminate the lease upon the building's being destroyed by fire, and this conclusion is much strengthened when we consider the terms of the lease and the character of the building. It was proved that the defendant did procure a policy of insurance upon the building, and that the insurance company paid to him the . sum of $2,250 as the amount of damage to the building. The defendant, however, claimed that under the statute (section 197 of the real property law; chapter 547, Laws 1896), which provides that "where any building which is leased or occupied is destroyed or so injured by the elements or any other cause as to be untenantable and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender the possession of the leasehold premises and of the land so leased or occupied; and he is not liable to pay the lessor or owner rent for the time subsequent to the surrender,"—he could surrender the possession of the leasehold, and was not liable for the subsequent rent. We think this lease and the agreement to which attention has been called is an express agreement to the contrary, by which it was clearly understood that the term should continue notwithstanding the destruction of the building, within the rule as stated by Judge Andrews in Butler v. Kidder, 87 N. Y. 98. The provisions in this lease by which the defendant agrees to insure for his own and sole benefit, "and will have no claim and demand on the party of the first part for any damages or loss on building in case of fire," but provides that in case of the destruction of the building by fire or otherwise, he may rebuild the same and erect another building, and the agreement of July, 1887, under which the tenant was required to insure the building, the property of the lessor, for his own benefit, in the name of the lessor, if necessary, and to receive the proceeds of such insurance, the lessor not to insure after May 1, 1890, "so that the party of the second part can secure the building referred to during the continuance of the lease dated May 1, 1887, and the renewals therein contained," are entirely inconsistent with the right of the tenant to terminate the lease as provided for by the statute. The provision in the agreement of July 1, 1887, that if the insurance should be paid to the lessor, and not to the lessee, the lessee should retain the amount thereafter to become due, expresses this intention; for, if the tenant had the right to surrender the possession of the premises and terminate the lease, there would be no rent which he could retain. And when we consider the nature of the building itself, the term of the lease, and the effect of these pro-

visions in the lease and agreement, it seems to be clear that there was an express agreement of the parties that the lease should continue notwithstanding the destruction of the building by fire.

It follows that the verdict was properly directed for the plaintiff, and that the judgment and order should be affirmed, with costs. All concur.