ETHEL E. J. HOLDEN, Formerly ETHEL E. J. CONKLING, Respondent, *v.* ANNA O'BRIEN and Another, Appellants.

First Department, May 2, 1924.

Landlord and tenant — action by landlord to recover amount paid for removal of encroachment on street — tenant is not liable under provision of lease requiring her to comply with all requirements of city in reference to abatement of nuisances.

A tenant of a house in the city of New York is not liable to the landlord for the cost of removing the front stoop of the building under direction of the New York city authorities on the ground that it encroached upon the street or highway, under a provision in the lease that the tenant would promptly execute and comply with all orders, regulations and requirements of the city government relating " to said premises, for the correction, prevention, and abatement of nuisances or other grievances, in, upon or connected with said premises during said term." It was not the intention of the parties that the tenant should be liable for changes of a structural character required because of an encroachment upon the street.

CLARKE, P. J., and FINCH, J., dissent, with opinion.

APPEAL by the defendants, Anna O'Brien and another, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 14th day of June, 1923, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, in favor of the plaintiff.

*Martin Bourke,* for the appellants.

*Bijur & Herts* [*Harry Bijur* of counsel], for the respondent.

MARTIN, J.:

On June 17, 1920, Ethel E. J. Conkling, now Ethel E. J. Holden, the plaintiff, as landlord, entered into a lease with Anna O'Brien and Mary Murray, the defendants, of premises known as No. 41 East Sixtieth street, in the borough of Manhattan, city of New York, for the term of ten years from the 1st day of August, 1920, to the 31st day of July, 1930, the premises " to be used and occupied for residence and dressmaking." The 3d paragraph of the lease provides:

" That the tenant shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and City Government and of any and all their Departments and Bureaus applicable to said premises, for the correction, prevention, and abatement of nuisances or other grievances, in, upon or connected with said premises during said term; and shall also promptly comply with and execute all rules

orders and regulations of the New York Board of Fire Underwriters for the preventions of fires, at their own cost and expense."

The rent was fixed at $6,500 net, payable in equal monthly payments of $541.67 on the first day of each month. The lease also contains the following:

" It is expressly agreed and understood that the tenants shall do all outside and inside repairs after said house is put in condition as per agreement," and " the landlord agrees to allow tenant to change the front of the house on basement floor into a store," and " that the tenants shall not   *   *   *   make any alterations on the premises, without the landlord's consent in writing,   *   *   *."

The New York city authorities ordered the removal or alteration of the front stoop of the building, on the ground that it encroached upon the street or highway. After the lessees had refused to comply with the order, the lessor arranged for the performance of the work. The cost thereof, $500, is the amount plaintiff seeks to recover in this action.

In order to comply with the requirements of the municipality, it was necessary to rebuild the stoop and to make repairs in and about the areaway.

The landlord now asserts and the Municipal Court judge and Appellate Term held that the tenants are liable for the amount so expended because they were required by the lease to comply with the order.

It will be noted that this work was not repair work, but a change in the structure of the building made necessary by reason of the unlawful encroachment of the building upon the public highway.

In *City of New York* v. *McCarthy* (171 App. Div. 570) the court said: " I am of opinion that it is now the general rule that a tenant who merely covenants to put and keep in repair is not obliged to rebuild where the rebuilding is not rendered necessary through his failure to perform his covenant to keep in repair, or through other fault on his part."

In *City of New York* v. *U. S. Trust Co.* (116 App. Div. 349) this court said: " We see nothing in these covenants or in the lease as a whole which imposes any obligation upon the tenant to incur the expense of removing the encroachments in question. Certainly their removal was not in the minds of the parties when the lease was entered into. The tenant's agreement to comply with all the rules, regulations and ordinances of the various city departments did not contemplate the tearing down of the stoop and steps and building a new entrance to the building, or the abandonment of the areaway and the providing of a new mode of outside entrance to the basement. Leases, like other contracts, are to be reasonably construed according to the apparent intention of the parties.

(*May* v. *Gillis,* 169 N. Y. 330; *Gillet* v. *Bank of America,* 160 id. 549, 555.) Where particular repairs are specified in a lease they limit the construction to be put upon broader language used in that connection. (*Ducker* v. *Del Genovese,* 93 App. Div. 575.) The removal of the stoop and areaway is surely an alteration of the building. By the lease the tenant is prohibited from making any ' alterations, additions or improvements ' to the premises without the written consent of the landlord. This negatives the idea that the tenant agreed to bear the expense of such alterations if they should be forced upon the building by any superior authority."

In *Herald Square Realty Co.* v. *Saks & Co.* (215 N. Y. 427) Judge WERNER, writing the opinion for the Court of Appeals, said (at p. 432): " It is impossible, of course, to lay down a general rule that will precisely fit all cases. The language of this lease, construed in the light of contemporaneous regulations, usages and customs, seems to require the conclusion that it was not the purpose of the parties to subject the tenant to an expense caused wholly by extraordinary and unforeseen building alterations made necessary by a subsequent and radical change in the policy of the municipal government, and we are brought to this conclusion despite the forceful argument of counsel for the plaintiff in which he contends that the expense of complying with the order of the borough president, directing the removal of the show windows, comes within the very letter of the lease. We think that this extraordinary expense was not in the contemplation of the parties when this lease was made. (*May* v. *Gillis,* 169 N. Y. 330.) "

In *Warrin* v. *Haverty* (159 App. Div. 840) this court, by Mr. Justice MCLAUGHLIN, said: " The changes thus made were structural in their nature. They went, in a large measure, to a reconstruction of the building itself and could not have been contemplated by the parties when the lease was made. When the tenant agreed to comply with all the rules, regulations and ordinances of the various city departments, it is unreasonable to suppose that either of the parties had in mind the tearing down of one of the walls and constructing a new one in its place any more than they had the tearing down of the entire building and putting up a new one."

In the case of *Galland* v. *Shubert Theatrical Co.* (105 Misc. Rep. 185) the court said (at p. 193): " Where, however, the order of the authorities calls for structural alterations which cannot properly be considered repairs and which the parties could not have contemplated that the tenant should make, it becomes the duty of the landlord to make such alterations even though the tenant and not the landlord is required by the lease to make all ' repairs ' or to comply with orders of the public authorities."

In *Cohen* v. *Margolies* (192 App. Div. 217; affd., 232 N. Y. 584) the court said (at p. 219): " The courts have nevertheless held in construing similar covenants that they did not apply to substantial and expensive alterations or repairs which involved structural parts of the building such as the rebuilding of walls or foundations (*Warrin* v. *Haverty*, 159 App. Div. 840) nor to ' extraordinary and expensive alterations ' made necessary by statutes or regulations enacted subsequent to the time when the lease was made."

The fact that the changes are of a structural character is not always decisive. We must seek the intention of the parties from the obligations assumed by the lease.

Attention is called by plaintiff, with some force, to the provision that the stipulated rent is to be " net " to the landlord, but nevertheless plaintiff must rely upon the violation clause. The tenants are not required to comply with municipal orders other than as provided in said clause.

In our opinion the words " and abatement of nuisances or other grievances, in, upon or connected with said premises during said term " relate to all that goes before in the 3d paragraph of the lease, quoted above. The tenants were required to execute and comply with " statutes, ordinances, rules, orders, regulations and requirements " only so far as same were directed toward " the correction, prevention and abatement of nuisances or other grievances." The term " nuisances," applied here to indicate the obligations of the lessees, may be fairly construed as relating only to the manner in which the premises shall be maintained by the tenants. The word " nuisances " was not intended to designate the projection of a substantial part of the building upon the highway. The tenants were to be charged with proper maintenance of the premises, but not with reconstruction. Considering the context in which we find the word " nuisances," it does not appear to have been intended to refer to such encroachment. The meaning in this clause of the other word used, " grievances," is illuminated by its association with the word " nuisances." They both relate to the obligation of the lessees and they must be interpreted in view of the entire situation as to the relationship into which the parties were entering. The word " grievances " has no more effect than " nuisances " in this clause to indicate an intention to impose upon the tenants an obligation to reconstruct the front stoop, should the city authorities order the set back of encroachments on the street.

The order of the municipality appears to have been made on March 27, 1922, two years after the lease was executed. There

is no reason for holding that this reconstruction was within the contemplation of the parties, but many reasons for holding it was not. The building had long been erected, and the removal of the encroachment evidently became necessary on account of a change in municipal policy.

The decision in *Herald Square Realty Co.* v. *Saks & Co.* (*supra*) is authority to the effect that the tenants here were not required by the lease to make the structural changes referred to, because they could not have been within the contemplation of the parties when the agreement was made.

In *City of New York* v. *U. S. Trust Co.* (116 App. Div. 349, 352) this court said: " Leases, like other contracts, are to be reasonably construed according to the apparent intention of the parties."

We have, therefore, reached the conclusion that the clause of the lease here under consideration did not contemplate payment by the tenant for structural changes ordered by the municipal authorities.

The determination should be reversed, with costs in this court and in the Appellate Term, and the complaint dismissed, with costs.

MERRELL and McAVOY, JJ., concur; CLARKE, P. J., and FINCH, J., dissent.

CLARKE, P. J. (dissenting):

The lease was made in June, 1920, and was for a term of ten years from the first of August of that year. It was upon a street in process of change from a residential to a business neighborhood. The house itself was to be used for business purposes and there was an express provision that " the landlord agrees to allow tenants to change the front of the house on basement floor into a store."

At that time the policy of the city authorities was well established to restore the business streets to the traveling public by removing all unlawful encroachments thereon — and so this is differentiated from the earlier cases decided upon the theory that a new policy had been adopted after the making of the lease which could not have been within the contemplation of the parties at the time. I am of the opinion that the language of the lease is broad enough to require the tenants to pay for removing the encroachments and that it was within the contemplation of the parties that the city might require it to be done during the life of the lease.

I vote to affirm.

FINCH, J., concurs.

Determination reversed, with costs in this court and in the Appellate Term, and complaint dismissed, with costs.