TRUSTEES OF SAILORS' SNUG HARBOR IN CITY OF NEW YORK, Plaintiff, *v.* EIGHTH STREET HOTEL CORP. et al., Defendants.

Supreme Court, Special Term, New York County, January 23, 1948.

*Rathbone, Perry, Kelley & Drye* for plaintiff.

*Leo V. McLaughlin* and *Stephen S. Bernstein* for Eighth Street Hotel Corp., defendant.

*John A. Bolles* for Alfred Palmer and another, defendants.

*Morris J. Goldston,* individually and as executor of Charles Bellak, deceased, defendant in person.

MILLER, J. This is an action for a declaratory judgment and for an injunction restraining the tenant from using the demised premises pending compliance with the provisions of section 67 of the Multiple Dwelling Law enacted April 7, 1947, by chapter 728 of the Laws of 1947, and performance by the tenant of the work ordered thereunder by the Department of Housing and Buildings. The issue presented by the complaint is whether the obligation to comply with the provisions of this new statute and the work ordered by the Department of Housing and Buildings thereunder is upon the defendants as tenants. Compliance requires substantial changes of the plaintiff's property, extraordinary in scope and radical in character, involving over thirty items at a cost in excess of $200,000.

The determination of the question involves the construction and interpretation of the lease made in 1937. The lease, after reciting that the lessor owns the hotel and the furniture, fixtures and equipment therein, and that the lessee will not use the premises for any purpose except as a hotel, and that the lessee will use and occupy the premises as a hotel, contains the usual and customary provision requiring the lessee to " make and pay for all repairs, both to the exterior and interior of the demised premises " and to " comply with the requirements of every statute and with every direction given by any public officer pursuant to law ". It is then provided further: " It is, however, understood and agreed that, anything in this article or this lease contained to the contrary notwithstanding, the Lessee shall not be obligated to make or pay for any structural changes to said premises, unless such structural changes to such premises shall be ordered or necessitated by reason of the alterations or improvements made in the premises by the Lessee, or due to the conduct of business on the premises, or shall be the natural result of such alterations or improvements, or the conducting of such business."

The only business conducted in the premises by the tenant is that permitted and required by the lease. There is no proof of any other business conducted by the tenant or of any nuisance or other grievance created by the tenant necessitating the alterations now required, nor is there any proof that the alterations

are necessitated by reason of previous alterations made by the lessee.

A tenant is not obligated to make " extraordinary and unforeseen building alterations structural or otherwise made necessary by a subsequent and radical change in the policy of the municipal government," despite a covenant in the lease that it will comply with all requirements of municipal authorities (*Holden* v. *O'Brien*, 209 App. Div. 266, affd. 240 N. Y. 560; *Herald Square Realty Co.* v. *Saks & Co.*, 215 N. Y. 427, 432; *Sullivan* v. *New York United Realty Co., Inc.*, 250 App. Div. 286; *May* v. *Gillis*, 169 N. Y. 330; *Zeliner* v. *Linn*, 59 N. Y. S. 2d 654).

In *Sullivan* v. *New York United Realty Co., Inc.*, (*supra*, p. 288) the court held: " We do not believe it was ever contemplated by the parties at the time the defendant assumed the lease, that it might become obligated to make structural changes in the premises for the purpose of complying with the law covering buildings of this type. The thought apparently never entered the minds of either the landlords or the tenant that it might become necessary, during the term of the lease, to erect fire escapes which would be accessible to every room on the second, third, fourth and fifth stories as was provided for in the order of the department of buildings."

The thought apparently never entered the minds of either the landlord or the tenants that it might become necessary, during the term of the lease, because of a radical change in the policy of the government, to reconstruct a substantial part of the building, as is provided in the statute or in the order of the Department of Buildings, particularly where the changes required while being made prevent the use of a large part of the premises for over seven months and require an outlay of over $200,000.

There is no provision in the lease that the tenant was to make changes of every kind, extraordinary as well as ordinary, by virtue of any present or future law, ordinance or authority whatsoever. The premises are now, other than an alteration heretofore made on consent, in the condition they were in when the lease was made. The lease provides that the landlord may terminate it at any time after 1946 on ninety days' notice by paying the lessee $75,000 if it is terminated before September 1, 1947, and thereafter by paying the lessee $7,500 less each year. It is evident that it was not contemplated by the parties at the time the lease was made that the tenant might become obligated to reconstruct a substantial part of the building, at an outlay of $200,000, and then, after a lapse of ninety days after

the completion of the changes, the tenant must surrender the premises to the landlord, if the latter so elects.

Judgment is, therefore, directed for the defendants dismissing the complaint on the merits. It is unnecessary at this time to determine whether the changes must be made by the plaintiffs. There is no express covenant in the lease requiring the landlord to comply with the orders of the municipal government and no counterclaim has been pleaded requesting such a judgment. Exception to plaintiff and to defendants. Submit findings of fact and conclusions of law within five days on two days' notice.