Francis J. Donovan, J.
The facts in this case are virtually undisputed. The landlord makes claim against the tenant of an upper floor for damage to walls and ceilings caused by an overflow of water. The lease contained a covenant that the tenant would perform all ‘‘ interior repairs.” The material facts bearing upon the cause of the overflow were as follows:
The tenant had started his automatic dishwashing machine and gone to bed. The machine had an automatic shutoff. However, the water remained under pressure as the faucets on the sink to which it was attached were left open. There was a rubber hose connected to a pipe under the sink with a spray attachment at the end. This hose was also placed under pressure throughout the night. Sometime during the night the rubber hose broke and in the morning water was found cascading into the lower premises. There was no proof that the tenant lmew, or should have known, that there was anything in the condition of the hose to reasonably apprise the tenant of the danger of its breaking. In short, there was nothing shown upon the trial which would support a recovery based on the theory of negligence.
*1022 The remaining problem is to consider the landlord’s contention that the tenant is liable for the resulting property damage on the theory of breach of contract.
Plaintiff, noting the scarcity of applicable case law, cites Lockrow v. Horgan (58 N. Y. 635), Curran v. Weiss (6 Misc. 138), and King v. Lenko Realty Co. (22 Misc 2d 376) as helpful authorities.
The Lockrow case concerns the duty of a tenant to make repairs. However, the landlord does not here seek to recoup the cost of the repair. The Lockrow case sheds no light on the principal questions raised, namely: (1) Was the covenant breached? (2) May consequential damage be recovered aside from, or in addition to, the cost of repair ?
The recovery in the Curran case was predicated on a negligence theory. This makes it inapplicable to the present case, for here there was no proof of notice, actual or constructive. In fact, here, the cause of the flooding is left to speculation. It could have been a worn-out hose or excessive pressure or a combination of both that caused the break. The broken hose was not produced, nor was there any technical or expert proof as to the cause of the break.
The dictum in the King case merely states that there is a possible right over in favor of a landlord if exposed to liability by the failure of a tenant to make repairs. This broad statement has little significance apart from some factual background which would furnish a specific application of the principle.
The mere occurrence of an overflow of water in the demised premises does not establish negligence. (711 Corporation v. Cavadi, 71 N. Y. S. 2d 887; Becker v. Bullowa, 36 Misc. 524.)
The complaint did not state separately causes of action based on the respective theories of negligence and contract. Insofar as the complaint might have lent itself to the development of a case in negligence, upon the trial, the motion to dismiss made at the close of the whole case was granted.
Defendant urges that the hose connection was of a structural nature and therefore its repair was not contemplated within the language, “ all interior repairs.” In support of this position he cites, inter alla, Block v. Baldan Realty Co. (129 Misc. 906); Havens v. Hartshorn (184 Misc. 310); and Fitch v. Armour (27 Jones & Sp. 413).
The Block case considered whether a faucet was an appliance within the definition of a statute relating to tenement housing. The case at bar does not involve any statute, nor are any of the laws governing multiple dwellings or residences applicable.
*1023 In the Havens case, the phrase involved was “minor and incidental repairs to the interior.” The defects in that case related to beams and supports. The case is not analogous to the one now before us.
The Fitch case holds that the landlord is responsible for keeping in repair that portion of the water supply system which serves more than one tenant. The hose connection in this case is designed to serve one tenant only, and was located within the premises under the tenant’s exclusive control. Hot only is the Fitch case distinguishable, but it suggests a contrary holding here; namely, where the portion of the supply system is not based in common but devoted solely to the use of a single tenant and within that tenant’s control, the responsibility for repair is on the tenant.
Upon all the facts, it is my opinion that the covenant to make all inside repairs requires the tenant to repair plumbing fixtures such as sinks, bathtubs and similar appliances to the extent that they are inside the demised premises and under his control. This obligation would include the appliance and its appurtenances from the point within the tenant’s domain where it takes off from the common water supply lines and to the point where waste is delivered back to the common waste lines.
Such an interpretation places no unreasonable burden on the tenant and finds support in the principle set forth in May v. Gillis (169 N. Y. 330). In the latter case, the phrase “ all inside and outside repairs ’ ’ was held to mean ordinary repairs.
To require the tenant to repair plumbing appliances and their appurtenances gives effect to the words used in the lease, for these are “interior repairs,” and it also gives effect to what was reasonably contemplated, for such repairs will not be extraordinary either in extent or cost. In the case at bar, the cost of replacing the broken hose was in the range of $5 or $6.
This, however, does not dispose of the matter. We must still consider whether there was a breach of the covenant and whether the damage claimed was reasonably foreseeable from that breach.
Plaintiff engaged a plumber to block off the hose connection and it is no longer in use. He makes no claim for this repair. Defendant is willing to supply and install a new hose. The case therefore does not involve an alleged breach after the hose broke and obviously required repair. At that point the tenant knew the appliance was out of order. If he then failed to make the repair and the flooding took place, he would be clearly liable for the consequential damage to the landlord’s property. (Beach v. Crain, 2 N. Y. 86.)
*1024 Defendant cites Cuttings v. Goetz (256 N. Y. 287) for the proposition that property damage resulting from a breach of a contract to repair cannot be recovered. That proposition may be applicable when suit is brought on a lessor’s obligation and the defective condition exists in a portion of the premises in control of a lessee, but it is not applicable in a case, as here, where the obligation is on the lessee and the condition exists in an area under such lessee’s control.
If a tenant obligates himself to make repairs and fails to do so, there is no reason why he should not be required to compensate the landlord for all damage reasonably foreseeable. This is the general contract rule. (5 Williston, Contracts [rev. ed.],§ 1347.)
If an appliance delivering water within the tenant’s upper floor is allowed to remain in disrepair, surely the tenant must foresee that flooding may result with damage to ceilings and walls on lower floors.
Plaintiff’s difficulty lies not so much in determining the applicable rule of damages as it does in proving a breach of covenant.
The tenant here is willing to repair the broken hose. That is the limit of his obligation. His covenant did not require him to test the functional adequacy of the appliances. The hose that gave way was a part of the plumbing not exposed to view. It was installed many years before and may have deteriorated over the years. But there was no proof of the accident, nor was there any proof that its age or worn condition was known to the tenant, or that the tenant should have known of such age or condition.
The case of Thomas v. Kingsland (108 N. Y. 616) is not directly in point because it involved a landlord’s covenant to repair, but its reasoning is applicable to the present case. The court there held that a covenant to £ £ put and keep ‘ in repair ” did not become operative until the defective condition was known, or should have become known, to the landlord. By analogy, a reasonable construction of a tenant’s covenant to repair requires that it should not become operative until the need for repair is known, or should have become known, to the tenant.
The tenant here did not know, nor did he have reason to know of any defective condition in the hose connection prior to the time that it broke. He has therefore not breached the contract insofar as the damage to the walls and the ceilings is concerned. -Tud&’ment for defendant.