Arthur Waohtel, J.
This is a nonpayment proceeding for rent for the months of May and June, 1961 in respect of a retail butcher store premises operated by the tenants herein, Buddy Bach and Sam Solomon, the assignees of a lease entered into between the landlord and the tenant Nat Feldman, commencing *859 July 1, 1959 and terminating June 30, 1964. The lease provided for the use of the demised premises for “ meat, poultry, fruit and vegetable market.” It specifically included the privilege of placing two stands fronting the store on Bathgate Avenue and two other stands fronting on 172nd Street. In accordance with the provisions of the lease, the tenants Bach and Solomon had the privilege and exercised the privilege of subletting a stand fronting the store to the undertenant, Tel-0-Ripe Banana Co., Inc.
A fire occurred in the demised premises on January 28, 1961. The landlord promptly thereafter caused repairs to be made. It was required to, and did, submit claims to its insurance company and to effectuate the adjustment thereof. Finally, on May 2, 1961, the landlord’s agent, Nehring Brothers, notified the tenants Bach and Solomon that the store ‘ ‘ has been completely repaired and is now available for your use.”
The tenants, Bach and Solomon, allege in their amended answer, as a defense to this case, that “by virtue of a total demolition of premises caused by fire not of the tenants’ making, said premises have been, since January 28, 1961, untenantable and continue to be untenantable.” And for a further defense they allege “under the provisions of Section 227 of the Real Property Law of the State of New Tork, the premises were so damaged or injured by the elements as to permit the tenant to surrender the premises and discharge the tenants from all liability under the lease.” The landlord contends that the premises were only partially damaged by the fire. Thus, an issue of fact is raised as to whether the premises were totally damaged or rendered wholly untenantable or whether they were only partially damaged, within the meaning of the lease.
The fire clause of the lease (par. 9, Landlord’s Ex. 1) provides as follows: “If the demised premises shall be partially damaged by fire * * * without the fault or neglect of tenant * * if th.e damages shall be repaired by and at the expense of Landlord and the rent until such repairs shall be made shall be apportioned according to the part of the demised premises which is usable by Tenant * * *. If the demised premises are totally damaged or are rendered wholly untenantable by fire * * * and if Landlord shall decide not to restore or not to rebuild the same, or if the building shall be so damaged that Landlord shall decide to demolish it or to rebuild it, then or in any of such events Landlord may, within ninety (90) days after such fire or other cause, give tenant a notice in writing of such decision * * * and thereupon the term of this lease shall *860 expire by lapse of time upon the third day after such notice is given, and Tenant shall vacate the demised premises and surrender the same to Landlord. ’ ’
The law is well settled that if the fire clause of a lease applies, it constitutes an express agreement to the contrary which excludes the operation of section 227 of the Real Property Law (Butler v. Kidder, 87 N. Y. 98, and see, Playfair Card & Toy Shop v. Landon Holding Corp., 134 N. Y. S. 2d 651). If there had been such total damage as is contemplated by paragraph 9, then this clause would not apply inasmuch as the notice required in such event was never given by the landlord. The fact is that the landlord never decided that the damage was of such character as to require demolition or rebuilding, and proceeded on the assumption that the damage was partial and repairable.
Upon all the evidence, the court concludes that this case is governed by the first portion of paragraph 9 pertaining to “ partial damage.” It appears that the fire damage was in the basement of the store and also in certain portions of the store premises resulting from operations of the firemen called to the scene, and from incidental smoke. The official record of the New York City Fire Department reported the damage by fire as “ slight ”. The premises adjoining the tenants’ store sustained only minor damage. Furthermore, the tenant himself testified that so far as he knew, the undertenant, Yel-O-Ripe Banana Co., Inc., “have always been doing business since the day of the fire.” The second portion of the fire clause which refers to a ease where the demised premises are “ totally damaged ” or “are rendered wholly untenantable by fire” must be interpreted in connection with the remaining language. It is clear from the remaining language that the total damage referred to is such as to require the landlord to “ restore ” or “ rebuild ” the premises, in which event he must notify the tenant of his decision. The use of the language ‘ ‘ restore ’ ’ and ‘ ‘ rebuild ’ ’ is significant. It connotes more than damage which is repairable (cf. General Outdoor Adv. Co. v. Wilson, 276 App. Div. 63); it implies such destruction of the premises by fire that repairs of the existing structure cannot be made and that a new structure must be built. This was not the case at bar. Accordingly, in accordance with the provisions of paragraph 9, “ the rent until such repairs shall be made shall be apportioned according to the part of the demised premises which is usable by the tenant ’ ’.
A sharp issue was presented with respect to whether and when the repairs were completed. The landlord contends the repairs were completed and the premises were made tenantable *861 on or about April 28, 1961. The tenant contends that as late as June 27,1961 he inspected the store premises and found that they were still unusable and specifically that the beams supporting the flooring were “ all burned and charred”; that in the store itself there were open spaces in the floor “ through which you could actually put your arm through,” about two feet by four feet in size, in the front end of the store; that the walls were all charred; and that the wiring was “ not intact or closed off or anything, whatever had to be done to it ”; and that the skylight leaks and “ anytime the rain falls, water floods the store.” It is significant that the certificate of inspection of the Department of Water Supply, Gras and Electricity, dated June 6, 1961 states 1 ‘ replace fire damaged wiring ’ \ The landlord takes the position that the entire premises were usable as of May 1,1961 and in its petition claims the full amount of rent for May and June. It has failed to sustain its burden of proof that the entire premises were usable for the periods of May and June and that the full amount of rent is payable for that period. It appears that the portion of the demised premises constituting the stand outside the store and sublet to the under-tenant was usable and was in fact occupied and maintained by the undertenant for such period. The rental for this space was $150 a month and accordingly, the landlord would be entitled to at least $150 a month for May and $150 a month for June. However, the petition does not seek an apportionment of rent and the case was not tried on that theory.
Accordingly, the proceeding is dismissed, without prejudice. Counterclaim of tenant for return of security is dismissed on the merits.