Irving Younger, J.
In 1952, plaintiff’s assignor leased to defendants’ predecessors a drug store located in the building at 360 Lenox Avenue, in the Harlem section of New York City. There were renewals from time to time thereafter, the most recent dated September 30, 1967, and running to April 30, 1974.
On April 4, 1968, Martin Luther King, Jr., was murdered: rioting broke out in Harlem. During these disorders, the building at 360 Lenox Avenue was damaged. A few days later, fire demolished the store.
Plaintiff promptly began to repair the premises. Defendants meanwhile informed plaintiff that they did not intend to reopen the store or reoccupy their space. By August 2, 1968 — some four months after the fire — the store had been reconstructed. Plaintiff tendered possession back to defendants. Consistently with their earlier advice to plaintiff, defendants declined the tender.
The consequences of defendants’ declination are now to be determined.
In November, 1968, plaintiff began this suit. The complaint contains five causes of action. The first seeks rent for the period from April 1, 1968, through April 4, 1968. The second through the fifth causes of action seek rent and other charges as additional rent for the period following tender of possession by plaintiff to defendants, various expenses incurred in boarding up the store after'defendants’ declination of plaintiff’s tender, and counsel fees.
Defendants’ answer, in substance, concedes the first cause of action and contests the rest on the ground that defendants were entitled to terminate the tenancy on April 4, 1968. In addition, defendants counterclaim for their security deposit.
Defendants have moved for summary judgment dismissing the second, third, fourth and fifth causes of action, and in their favor on the counterclaim. Plaintiff has cross-moved for summary judgment on the complaint.
*517 Defendants rest their ease on section 227 of the Real Property Law: “ Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender.” Hence, defendants urge, they were free to quit the store on April 4,1968, and are not liable to pay rent or related expenses for any period thereafter.
Conceding that section 227 controls unless an “ express ,agreement to the contrary has been made in writing,” plaintiff points to paragraph 11 of the,lease as such an agreement: “ If the demised premises shall be partially damaged by fire or other cause without the fault or neglect of Tenant, Tenant’s servants, employees, agents, visitors or licensees, the damages shall be repaired by and at the expense of Landlord, and the rent until such repairs shall be made shall be apportioned according to the part of the demised premises which is usable by Tenant. No penalty shall accrue for reasonable delay which may arise by reason of adjustment of fire insurance on the part of Landlord and/or Tenant, and for reasonable delay on account of ‘ labor troubles,’ or any other cause beyond Landlord’s control. But if the demised premises are rendered wholly untenantable by fire or other cause, and Landlord shall decide not to rebuild the same, or if the building shall be so damaged that Landlord shall decide to demolish it or to rebuild it, then or in any of such events, Landlord may within ninety (90) days after such fire or other cause, give Tenant a notice in writing of such decision, which notice shall be given as in Article 32 hereof provided, and thereupon the term of this lease shall expire by lapse of time upon the third day after such notice is given and Tenant shall vacate the demised premises and surrender the same to Landlord.” Since it never gave defendants notice of termination of the tenancy, plaintiff urges, the tenancy never ended, and when plaintiff rebuilt the store and tendered possession to defendants, the defendants’ obligation to pay rent was revived.
Section 227 says, in substance, that a total destruction of the premises permits the tenant to terminate the tenancy. If this relief were not available to him, a tenant whose premises have been demolished would be required to continue to pay rent for the use of space that is no longer usable. (Cf. New York *518 Real Estate Bldg. Improvement Co. v. Motley, 143 N. Y. 156, 160.) The parties to a lease are free, under the statute, to agree to some other rule with respect to total destruction, so long as the other rule is in writing and express. Paragraph 11 of the lease is of course in writing. To my eye, however, it is not express. “ Express,” in this context, means an agreement that is distinctly stated, clear, explicit, and plain. It should appear “that the parties had in mind the contingency mentioned in the statute, and inserted provisions or covenants, inconsistent with the right of surrender thereunder. There must be a necessary implication from the written agreement, of an intention that the rent and term should continue, nothwithstanding the occurrence of the events mentioned in the statute, and such intention is not to be spelled out from doubtful clauses, or argumentatively inferred. ” (Butler v. Kidder, 87 N. Y. 98, 104.) Words like, “ Section 227 shall not apply; instead, the landlord alone shall have the option, in the event of total destruction of the premises, either to terminate this lease or to rebuild the premises and hold the tenant to his obligations hereunder,” would be an express agreement contrary to section 227. Paragraph 11 contains no such words and nothing resembling such words. Thus paragraph 11 is not an “ express agreement to the contrary.” Plaintiff asserts that it is, much as a city dweller might point to a cow and say, “It’s a goat.” It simply is not. (Hoefler v. Gallery, 8 N Y 2d 369, 373.)
The purpose of paragraph 11 is illuminated by comparing it with section 227. The statute sets forth the tenant’s rights. The lease sets forth the landlord’s rights. The two are complementary, and may be restated jointly as follows: in the event of total destruction of the premises, the tenant may remove; if he does, the tenancy is ended; if he does not, the tenancy is not ended; but, in that event, the landlord may terminate the tenancy by complying with paragraph 11; if he does not comply with paragraph 11, the tenancy continues.
I am aware that one of my colleagues takes a contrary view. (Matter of Manufacturers Trust Co. v. Bach, 32 Misc 2d 858; Siegel v. Goldstein, 1 Misc 2d 839; Playfair Card & Toy Shop v. Landon Holding Corp., 134 N. Y. S. 2d 651.) In all three cases, the court described Butler v. Kidder (supra), as answering in the affirmative the question whether a clause like paragraph 11 takes the lease out of section 227. Upon examination, one finds that Butler v. Kidder did not consider the question, let alone answer it. For this reason, therefore, apart from any other grounds of distinction, I decline to follow the cited cases.
*519 Since I conclude that the store was totally destroyed on April 4, 1968, that defendants thereupon made known to plaintiff that they were surrendering the premises to plaintiff, and that section 227 is controlling here, I grant defendants’ motion for summary judgment dismissing the second, third, fourth, and fifth causes of action, and in their favor on the counterclaim. Plaintiff is entitled to summary judgment on the first cause of action. On the entire case, then, defendants shall have judgment against plaintiff in the sum of $1,612.68, with interest from April 4, 1968.