(117 App. Div. 206)

APPLETON et al. v. MARX.

Supreme Court, Appellate Division, First Department. January 11, 1907.)

1. LANDLORD AND TENANT—COVENANTS TO REPAIR—DUTY OF LESSEE.

Under a covenant in a lease that the lessee will make all repairs that may be needful to the premises during his term, and will keep them in good order and repair during his term, and will quit and surrender them in as good state and condition as reasonable use and wear will permit, he is liable for failure to keep and leave them in good repair, having due regard to the age and class of the building, without regard to the defects having existed when he took possession.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 613.]

2. SAME—WAIVER BY LANDLORD.

Though a tenant covenants to make all needed repairs and keep and leave the premises in good order and repair, and he fails to repair an elevator and pump, the landlord waives the right to collect what repair thereof would have cost, by putting in a new and improved elevator and pump, when the old ones could have been repaired.

3. SAME—OUTLAYS MADE BY LANDLORD—SUFFICIENCY OF EVIDENCE.

Evidence in an action by a landlord for the cost of repairs which the tenant covenanted but failed to make, *held* insufficient to authorize allowance of an item for painting.

4. SAME—EFFECT OF REPAIRS MADE BY SUBSEQUENT LESSEE.

Where a tenant covenanted to keep and leave the premises in good order and repair, he is liable to the landlord for failure to do so, though a subsequent lessee whose term commenced at expiration of the first term, made the same covenant, and at his own expense made the repairs which the first tenant should have made.

Laughlin, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by William W. Appleton and another, trustees under the will of James E. Cooley, deceased, against Max Marx. From a judgment for plaintiffs, entered on report of a referee, defendant appeals. Affirmed.

The opinion of the referee is as follows:

It is admitted by the defendant that he has failed to pay to the plaintiffs the sum of $1,000, part of the rent which became due by the terms of the lease on the 1st day of April, 1902.

The defendant covenanted that "he will make all repairs inside and outside of the said building which may be needful to the demised premises during his term, including repairs to all plumbing work and pipes, and will keep the demised premises in good order and repair during his term, at his own expense, * * * and will quit and surrender the premises hereby demised in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted." The plaintiffs allege that the defendant failed to keep these covenants: that he did not maintain the premises in good condition, but allowed them "to fall into and remain in a condition of dilapidation and disrepair, and quitted and vacated the same

while in such condition," by reason whereof the plaintiffs have sustained substantial damage.

Covenants of this character have been frequently considered by the courts, and are no longer of doubtful meaning. In Green v. Eden, 2 Thomp. & C. 582, the covenant was "to keep the whole of said house and premises in good repair and condition during the said demised term." It was held that the tenant was bound to repair defects existing at the time he took possession. In Lockrow v. Horgan, 58 N. Y. 635, the covenant was "to make all necessary repairs, and to keep the same in tenantable order at his own cost." The premises became untenantable by reason of the settling of a wall, owing to defective construction of the foundation. The court said the tenant "was bound to make the repairs irrespective of the cause of the defect." In Lehmaier v. Jones, 100 App. Div. 495, 91 N. Y. Supp. 687, the lessee covenanted "that he will keep said premises in good repair at his own expense during said term, * * * and at the expiration of the said term will quit and surrender the premises hereby demised in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted." The action was against the lessee for damages for failure to keep and leave the premises in good repair. No proof was given by the plaintiffs as to the condition of the buildings when the lease was made. They rested their right to recover upon the fact that the buildings were out of repair when possession was surrendered by the defendant. His contention was that his covenant should be construed "as if it provided that if the tenant desired any repairs he should make the same at his own expense, and that, therefore, it was incumbent on the plaintiffs to show that the premises were in a better state of repair when the lease was made than at the expiration of the term." The court held otherwise, saying that by the covenant the tenant was obligated not only to keep the premises in as good repair as when he entered, "but to put, keep and leave in good repair, having due regard to the age and class of the buildings," and this construction the court said is sustained by authority."

The building in question in this case was an old building, erected many years ago, but there is no proof that when the defendant took possession, or at any later time, its foundations or walls were not in good condition or that it was otherwise structurally weak. In 1887 it was leased for a term of ten years to the New York Steam Company, and that company expended in alterations and repairs upwards of $33,000. When the lease to the defendant was made it was clearly understood by both parties that to put the building in proper repair would require a considerable outlay, and it was stipulated in the lease that towards these repairs the lessors should contribute the sum of $1,000. which they did. The duty of making all repairs in excess of this sum, and of keeping and leaving the building in good condition, was assumed by the defendant by the covenants which have been referred to.

I must find as a matter of fact that the defendant did not leave the building in good condition. Upon this point the testimony of witnesses is in sharp conflict, but, in my judgment, the weight of testimony, all things considered, is plainly in favor of the plaintiffs. The measure of their damages is the necessary cost of making the repairs. Lehmaier v. Jones, supra. The amount they claim for damages is $5,982.88. It is, I think, excessive. Some of the items should be disallowed.

They claim $1,000 for repairing the elevator. The testimony of the architect is, "In the estimate received for repairing the elevator and car the amount was approximately $1.000." The cost of repairing the car was $200, and for that a separate claim is made. The elevator was an old one and operated by hydraulic or steam power, the architect is not certain which. It was not repaired, but a new and modern elevator operated by electricity was put in at an expense of $2 000. It is not claimed that this was a necessity or that the old elevator was incapable of repair. Mr. Leeming. the architect, says, "It was deemed unwise and unsafe to use the then present elevator, and it was deemed unbusinesslike to expend the amount of money which would be necessary for repairs to the then present elevator, when, for a certain greater sum, a new elevator could be installed." So that it seems that the plaintiffs did not choose to hold the defendant to the terms of his cov-

enant. They elected not to repair at his expense, but to put in new machinery of an improved and essentially different character. My opinion is that they have no right to charge the defendant with the cost of that improvement to the extent of what repairs to the old machinery would have cost had they been made.

The same objection lies to the item of $177.10 for "elevator pump." This pump was a Worthington steam pump, and was used to raise water to the tank on the roof. Mr. Leeming testifies as follows: "It was in very poor condition indeed. I cannot say anything positively now as to its exact condition, except that, after consultation, it was decided that it was absolutely necessary to remove it and to put in a new pump. * * * It was deemed unfit for use; it was deemed impossible to repair it, and a new elevator pump was put in." When asked on cross-examination, "What was the matter with it?" he said, "It leaked. It needed repacking, and was badly worn." There is testimony, and it is not contradicted, that the pump was in working order and in use down to the time the defendant quitted the premises. There is no testimony that it at any time failed to do the work for which it was provided. The cost of the new electric pump is disallowed.

The plaintiffs claim to recover the sum of $441 as the cost of "painting the walls, etc., in building," and the further sum of $600 for "painting." Concerning the first item, the architect says: "That was the total expense for putting the woodwork in the halls and the woodwork in the rooms in proper condition. * * * It covered the painting of the old woodwork in the halls and in certain offices in the building—not all of them—and it covered the painting of the walls and ceilings, the window frames, the roof, the new tank house, and such work in the building as required painting to put it in a good state of repair. * * * Painting the sash and frame and trim of the building, varnishing the old worn-out woodwork, and all the general work required to put the old work in good condition, $375." He further testified that the general contractor for the mason and carpenter work, plastering and "general overhauling" of the building "did some work," the cost of which, included in the original estimate, was $600, and that the said contract covered various items of repairs, including an item of $600 "for painting." In my judgment the testimony read together, does not warrant the allowance of this $600 item.

The remainder of the plaintiffs' claim for damages (except the item of $25 for a metal ceiling), amounting to $4,180.78, should, I think, be allowed, provided the plaintiffs have any right of recovery on such claim, which the defendant denies.

The proofs show that in April, 1901, a full year before the expiration of the defendant's term, the plaintiffs leased the said premises to the Waterman Company for five years from May 1, 1902, and that the lease contained a covenant similar to that contained in defendant's lease—that is to say—the Waterman Company engaged to, "at its own expense, make all repairs inside and outside of the said building which may become needful during the said term, including repairs to all plumbing work and pipes, and keep the demised premises in good order and repair during the said term": and they show also that the repairs to the building which were made necessary by the defendant's default were made by and at the expense of the Waterman Company. Upon these facts it is argued that the defendant is not liable upon his covenant, because the plaintiffs sustained no damages through his nonperformance. The same argument was overruled by the English Court of Appeal in Joyner v. Weeks, 2 Q. B. 31. In that case the defendant had covenanted to keep and leave the premises in good repair, which he failed to do, and the plaintiff recovered damages. The defendant's lease expired in 1889. In 1887 the plaintiff made a lease of the same premises to another party, to begin at the close of the defendant's term. The court assumed that the second lease required the new tenant "to put the premises into the same state of repair as was required by the first lease." The Master of the Rolls (Esher) said: "In my opinion, the contract between the plaintiff and the third person cannot be taken into account; it is something to which the defendant is a stranger." Fry, L. J., concurred in this, saying: "It seems to me that it is res inter alios acta, with which the lessee has nothing to do

and which he is not entitled to set up. How can subsequent performance by the second lessee of the covenants which he has entered into abridge or take away the cause of action which vested in the lessor before the second lease took effect? * * * The second lease passed no estate until possession was taken under it. * * * The lessor had a right of entry on the determination of the first lease. Directly that happened, a right of action for damages accrued in respect of the breach of the covenant to yield up in repair. Therefore, the lessor's right of action for these damages vested before any estate vested in the grantee of the subsequent lease." Rawlings v. Morgan, 18 C. B. (N. S.) 776, and Morgan v. Hardy, 17 Q. B. Div. 770, are in harmony with this decision. The claim for damages is therefore sustained to the extent mentioned above.

The defendant has interposed a counterclaim, alleging that, by false and fraudulent statements made by authorized agents of the plaintiffs with knowledge of their falsity and with intent to deceive, and on which he relied, he was induced to enter into the lease of the premises and damaged to the extent of $24,000. The testimony does not support the claim.

The plaintiffs are entitled to judgment for $5,180.78, with interest on $1,000 from April 1, 1902.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles Strauss, for appellant.
J. Hempden Dougherty, for respondents.

PER CURIAM. The judgment is affirmed on the opinion of the referee. All concur, except LAUGHLIN, J., who dissents upon the grounds of error in allowing recovery for items not embraced in bill of particulars, and for incompetent and insufficient proof of reasonable cost of making required repairs.