SANKA CLASSICS, INC., Appellant-Respondent, *v.* ATLANTIC TERRA COTTA COMPANY, Respondent-Appellant.

First Department, June 22, 1948.

104

*Louis G. Bernstein* of counsel (*Charles E. Scribner* and *Frank R. Bruce* with him on the brief; *Whitestone, Sankin & Tepper,* attorneys), for appellant-respondent.

*Stephen P. Duggan, Jr.,* of counsel (*Irving Parker* with him on the brief; *Simpson Thacher & Bartlett,* attorneys), for respondent-appellant.

DORE, J. The issue is whether the mortgage tendered to the assignee of the purchaser for execution on the closing date was the mortgage which the purchaser had agreed to execute pursuant to the terms of the contract of purchase and sale.

The learned trial court found after a four-day trial that the parties did not leave for future negotiation the terms of the mortgage specifically identified in the contract, and that the purchaser after inspecting the premises and with actual notice of the purchase money mortgage to be executed was bound by the terms of such mortgage including clause 14.

Plaintiff does not contend that the mortgage tendered for execution was not in the proper form of the mortgage agreed upon. The undisputed evidence is that clause 14 had been in the same form unchanged since 1933. The contract was made October 18, 1945; and the last closing date was April 9, 1947.

This is not a suit in equity for specific performance; no fraud or mistake is claimed; and no suit for reformation is brought. This assignee has no desire to purchase the property pursuant to the terms of the contract. Plaintiff sues at law

for alleged breach of contract by defendant, the seller. The learned trial court properly found that the language of the contract was not ambiguous, that the breach was by plaintiff, as assignee, in refusing to abide by the contract as written and agreed to by the parties; that the court could not write a new contract; and that there was nothing left open for negotiation as to what the precise terms of the contract were.

Price, the original purchaser, never objected to the mortgage and has no financial interest in the outcome of this litigation.

The trial court correctly held that plaintiff breached the contract and was entitled to no damages, and also properly dismissed the counterclaim on the merits.

The judgment appealed from should be affirmed, without costs.

VAN VOORHIS, J. (dissenting). Both plaintiff and defendant appeal from a judgment dismissing the complaint and the counterclaim after trial in an action for damages arising from the failure to complete a contract for the purchase and sale of about fifteen acres of real property located at Tottenville, on Staten Island, in the Borough of Richmond, containing twenty-six buildings. Among them were four residences. Many were one-story one-room affairs of wood, terra cotta or cinder-block construction. Among them were a gate house, a modelling studio, a plaster shop, an open wooden storage shed, a raw material storage building, a machinery room, a boiler house, an engine room, and a large one-story building, with approximately 20,000 square feet of floor space of brick and concrete construction. It is established that many of these buildings were dilapidated, and that all of them were greatly in need of repair. Some of them were incapable of repair.

The purchase price was $65,250, $45,000 of which was to be paid by purchase-money bond and mortgage due in five years. The date of the contract, which was entered into by plaintiff's assignor as purchaser and the defendant as seller, was October 18, 1945, and the closing date was stated therein to be July 1, 1946. The contract provided that the purchaser should take possession of one of the larger buildings on the premises as tenant under a lease for a term ending on the closing date July 1, 1946, at a specified rental. The purchaser paid what was required of it, including extra sums for the privilege of postponing the closing date from time to time until April 7, 1947. On that date it assigned the contract to plaintiff. Plaintiff appeared at the closing as assignee, objected to clauses 3 and 14 in the purchase-money mortgage as it had

been prepared by the defendant, secured an additional adjournment of two days, and on April 9, 1947, defendant consented to modify clause 3 in the mortgage, but refused to withdraw or modify clause 14, which plaintiff contended would allow the mortgage at defendant's option to become due and payable immediately after the closing of the deal. Plaintiff refused to execute the mortgage in that form which defendant insisted upon, and the transfer was not consummated.

Clause 3 of the mortgagor's covenants stated: "That no building on the premises shall be removed or demolished without the consent of the mortgagee."

The controversy concerning that was resolved by both parties agreeing to add, "except as it may be necessary to remove or demolish such building or buildings as the result of any order or direction of any governmental department claiming jurisdiction or the statutes, orders, requirements or decrees relating to said building or buildings by any Federal, State or Municipal authority."

A number of these buildings either had been or were about to be condemned by the public authorities. The rest were in bad repair, even if not subject to demolition. Plaintiff contended that it would have been obligated immediately to place the buildings which were to remain standing in good repair, if defendant so required, under the 14th clause in the proposed mortgage whereby the mortgagor-purchaser would have covenanted: "That the whole of said principal sum shall become due at the option of the mortgagee if the buildings on said premises are not maintained in reasonably good repair, after notice of the condition of the building is given to the mortgagor * * *."

The contract of sale provided that the purchaser agrees to take the premises "in their present condition, having made an inspection thereof." Plaintiff took the position at the closing, that it was not obligated under the contract to execute a mortgage by which it would be compelled to place such buildings as the public authorities did not order to be destroyed in better condition than when they were conveyed. In order to make sure that the proposed purchase-money mortgage would not require it to assume such an obligation, plaintiff at the closing, asked that clause 14 in the mortgage be subjected to the qualification expressed by the following additional words: "except that nothing herein contained shall require the mortgagor to keep the premises hereby mortgaged in a better state of repair than exists as of the date of the execution hereof."

The plaintiff's assignor has put a considerable amount of money into the property in reliance upon performance by defendant of this contract.

It seems to me that plaintiff was justified in refusing to execute a mortgage, in form for five years, but which would in reality have been subject to foreclosure at any time unless plaintiff were to spend the large sum of money necessary to put in a reasonably good state of repair the buildings which were to remain standing on these premises. The bad condition in which they were is attested by the purchase price of $65,250, which would have been a small sum indeed for the purchase of such a large number of buildings if they had been in a good state of repair. There is testimony that it would have cost $150,000 in order to have put all of these buildings in good repair. This figure would doubtless be reduced if the twelve or fourteen buildings were eliminated which were beyond repair, but nevertheless the cost of the work thus required to be performed would have amounted to a large sum of money.

Defendant, on the appeal, suggests in its brief that clause 14 in the mortgage as proposed would not have obligated plaintiff to have placed these buildings in a better state of repair than when purchased, citing *Street* v. *Central Brewing Co.* (101 App. Div. 3). The clause in question causes the mortgage to become due if the buildings on the premises " are not maintained in reasonably good repair, after notice * * *." The authorities are clear that such a clause as this is not satisfied by maintaining a state of repair which is no better than when the property is received. Thus in *Lehmaier* v. *Jones* (100 App. Div. 495) where this court considered a covenant in a lease to " keep said premises in good repair ", it was stated (pp. 497–498) : " The plaintiffs did not show the condition of the buildings at the time the lease was made, but based their right to recover upon evidence showing that the buildings were out of repair at the time possession of the premises was surrendered. The learned counsel for the respondent maintains that the covenant to keep the premises in good repair should be construed the same as if it provided that if the tenant desired any repairs he should make the same at his own expense, and that, therefore, it was incumbent on the plaintiffs to show that the premises were in a better state of repair when the lease was made than at the expiration of the term. This is the principal question presented by the appeal. * * * This appears to be an express covenant made by the tenant to his landlord, and it is

to be borne in mind that the lease was for a long term, which does not make it such a hardship as at first it might seem. Wood, in his work on Landlord and Tenant (§ 372), says, ' A covenant to repair, keep and leave the premises in repair at the end of the term does not bind the tenant to keep or leave them in any better repair than they were when he went into possession; he is merely bound to maintain them as they are,' and he cites as his only authority for the proposition the case of *West* v. *Hart* (7 J. J. Marsh [Ky.] 258), which appears to so hold. In the 2d edition of this author's work, however, while the original text is continued in section 369, the case of *Payne* v. *Haine* (16 M. &. W. 541), holding the contrary rule, is cited in a previous note to said section with seeming approval. (Wood Landl. & Ten. [2d ed.] 806, 807.) With this exception, no authority has been cited, and we find none sustaining the doctrine of the Kentucky case, and we are of opinion that it is not in accordance with the trend of judicial authority in other jurisdictions. McAdam, in his excellent work on Landlord and Tenant (Vol. 1 [3d ed.], p. 429), says: ' Under a covenant to " keep " in repair, if to keep in repair it is necessary that the rooms should first be put in repair, the covenantor is bound to perform that duty.' The rule is stated in the American and English Encyclopaedia of Law (Vol. 18 [2d ed.], p. 252) as follows: ' But an agreement by the tenant to keep the premises in good repair or tenantable repair, or the like, requires the tenant to put the premises in such repair in case they are not so at the time of the letting.' In *Green* v. *Eden* (2 T. & C. 582) the tenant covenanted to ' keep ' the premises ' in good repair and condition ' during the term. The roof and steps were in bad condition at the commencement of the term, and became worse before the tenant left. The landlord made the necessary repairs, and it was held that he could recover for the same from the tenant. I think this covenant should be construed as obligating the tenant not only to keep the premises in as good repair as when he enters, but to put, keep and leave in good repair, having due regard to the age and class of the buildings, and that this construction is sustained by authority. (*Payne* v. *Haine, supra*; *Green* v. *Eden, supra*; *Proudfoot* v. *Hart*, L. R. 25 Q. B. Div. 42 [1890]; *Douse* v. *Earle*, 3 Lev. [1689] 264; *Myers* v. *Burns*, 35 N. Y. 269; *Ward* v. *Kelsey*, 38 id. 80; *Lockrow* v. *Horgan*, 58 id. 635; *Heintze* v. *Erlacher*, 1 City Ct. Rep. 465; 1 Add. Cont. [Abb. Am. ed.] \*239; 1 McAdam Landl. & Ten. [3d ed.] 429.)'' To the same effect are the following other

cases involving covenants to keep or maintain in good repair which are drafted in language essentially similar to the one at bar: (*Markham* v. *Stevenson Brewing Co.*, 104 App. Div. 420; *Appleton* v. *Marx*, 117 App. Div. 206, affd. 191 N. Y. 81; *Bushwick Realty Co.* v. *Sanitary Fire Proofing Co.*, 129 App. Div. 533; *City of New York* v. *McCarthy*, 171 App. Div. 561; *Ridder* v. *Mutual Paper Co.* [App. Term, 1st Dept.], 126 Misc. 108; *Feuerberg* v. *Polsky* [App. Term, 1st Dept.], 180 N. Y. S. 103. See, also, 45 A. L. R. 19 *et seq.*).

This is not a case involving a mere general covenant to repair such as is referred to in *May* v. *Gillis* (169 N. Y. 330).

It is not comparable to a covenant merely to make necessary repairs and to leave the premises in as good condition as when received, reasonable wear and tear and damage by the elements excepted (*Tinsley* v. *Smith*, 115 App. Div. 708, affd. 194 N. Y. 581).

The case of *Street* v. *Central Brewing Co.* (101 App. Div. 3) cited by respondent, merely holds that a covenant to keep in good repair does not require rebuilding if repair is no longer possible.

Defendant's contention that clause 14 in the mortgage as proposed would not have obligated plaintiff to put these buildings in better condition than when received, does not square with the refusal of defendant's attorney at the time and place appointed for closing the transfer to agree to that construction in writing. Plaintiff offered to close the deal with clause 14 in the mortgage, as has been stated, if it were qualified by the words " except that nothing. herein contained shall require the mortgagor to keep the premises hereby mortgaged in a better state of repair than exists as of the date of the execution hereof." Defendant's unwillingness to stand by that construction goes far to justify plaintiff's apprehension at the time for closing.

The principal ground on which plaintiff has been defeated in the action assumes that by executing such a mortgage, plaintiff could have been required to put the buildings that were to remain standing in better condition than when received, and justifies this for the reason that the contract of purchase provided that the bond and mortgage to be given by the purchaser " shall be in the forms usually employed by Title Guarantee & Trust Company for bonds and mortgages of like lien ". The evidence shows that clause 14 was taken from the printed form of said lending institution. This determination, as it seems to

me, is clearly erroneous. Doubtless the clause in question is in the printed blanks of Title Guarantee & Trust Company, but the meaning of the contract between this vendor and purchaser was manifestly that although such form should be employed, it would necessarily be adapted to the circumstances of this transaction, and would be made to conform to the other provisions of this purchase agreement. The latter contains elaborate recitals by way of estoppel whereby the purchaser acknowledges that no representations have been made concerning the condition of the buildings, that it has made its own inspection and is acquainted with its state of repair, and then provides that the premises are to be transferred " in their present condition ". It was not intended that the purchaser would have to expend at once a large amount of money for the improvement of this property in order to prevent the vendor from calling the purchase money mortgage at any time. The contract states that this mortgage was to run for five years. Although the Title Guarantee & Trust Company forms of bond and mortgage were to be used, they were to be related to this transaction, and moulded to the requirements of this agreement. If in any respects the agreement and the printed forms were at variance, the former was intended to govern, by a principle similar to that which directs that where there is a conflict between printed and typewritten portions of an agreement, the typewritten part controls (*Chadsey* v. *Guion,* 97 N. Y. 333, 339; *Wilson & English Constr. Co.* v. *N. Y. C. R. R. Co.,* 240 App. Div. 479, 483).

I vote to reverse the judgment appealed from on the law and to grant judgment to the plaintiff for the damages sustained by plaintiff's assignor as represented by the capital investment which plaintiff's assignor has made in the contract and in the property.

PECK, P. J. (dissenting). I agree with Justice VAN VOORHIS that clause 14 in the mortgage form would have to be adapted to the circumstances of the transaction and conform to the other provisions of the purchase agreement. The parties had their impasse in attempting adaptation. The difference between them on this critical clause amounted to a failure to agree upon an essential term of the contract. I do not think this cast the defendant in default, no matter how unreasonable it may have been, but neither do I think that the plaintiff was obliged to purchase a law suit along with the property. Under the circumstances, I think plaintiff is entitled to recover its payments on account of the purchase price, but is not entitled to recover the cost of the improvements which it made for its own benefit

in connection with its use of the property. Accordingly, I dissent and vote to reverse the judgment and grant judgment to the plaintiff for $19,313.75, with interest from April 7, 1947.

GLENNON and CALLAHAN, JJ., concur with DORE, J.; PECK, P. J., and VAN VOORHIS, J., dissent with opinions.

Judgment affirmed, without costs.